Filed 5/29/24  P. v. Johnson CA1/1

**NOT TO BE PUBLISHED IN OFFICIAL REPORTS**

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

FIRST APPELLATE DISTRICT

DIVISION ONE

| | |
|---|---|
| THE PEOPLE,<br><br>    Plaintiff and Respondent,<br><br>v.<br><br>DARRYL JOHNSON,<br><br>    Defendant and Appellant. | A166220<br><br>(San Mateo County<br> Super. Ct. No. 21NF008659A) |

Defendant Darryl Johnson appeals from a 12-year prison sentence imposed after a jury found him guilty of felony second degree robbery and misdemeanor possession of drug paraphernalia.  On appeal, Johnson contends that his trial counsel was ineffective for (1) failing to assert the applicability of recent amendments to Penal Code[1] section 1385 at sentencing, and (2) declining to expressly argue in favor of the presumptive low term for the robbery count based on recent amendments to section 1170. Johnson argues that remand is required so that the trial court can consider the sentence imposed in light of those amendments.  Finally, he maintains, and the Attorney General concedes, that the trial court erred in staying rather than dismissing his second five-year serious felony enhancement.  We issue a limited remand for the trial court to either strike the second

---

[1] All undesignated statutory references are to the Penal Code.

enhancement or strike the punishment for that enhancement, but otherwise affirm.

## I. BACKGROUND

On September 27, 2021, the San Mateo County District Attorney filed the operative information in this case, alleging that Johnson committed felony second degree robbery (§ 212.5, subd. (c); count 1); misdemeanor possession of drug paraphernalia (Health & Saf. Code, § 11364; count 2); and misdemeanor possession of burglar's tools (§ 466; count 3). Count 1—a serious and violent felony (§§ 667.5, subd. (c), 1192.7, subd. (c))—was enhanced with allegations that Johnson personally used a dangerous and deadly weapon (a knife) within the meaning of section 12022, subdivision (b)(1). In addition, the information alleged that Johnson had suffered two prior serious and/or violent felonies under the "Three Strikes" law (§§ 667, subd. (d), 1170.12, subd. (b)); two prior serious felony convictions subject to five-year enhancement (§ 667, subd. (a)(1)); and prior felony convictions rendering him presumptively ineligible for probation (§ 1203, subd. (e)(4)). It also alleged that Johnson committed count 1 while on parole following a term of imprisonment for an enumerated serious or violent felony within the meaning of section 1203.085, subdivision (a).[2]

### A. *Jury Trial*

A jury trial was held over several days in June 2022. N. Smith testified that, on July 20, 2021, she was a merchandise manager at a Dollar Tree located in Daly City. Johnson walked into the store coughing loudly and

---

[2] Count 3 was subsequently dismissed upon motion by the prosecution. Shortly before trial, the prosecution elected to try the case as a two strike case rather than a three strike matter and the information was orally amended to plead the priors under subdivision (c)(1) of section 1170.12 rather than subdivision (c)(2).

without a mask.  Smith was concerned about being exposed to COVID-19 and reported him to the store manager.  Later, she saw Johnson using his hand to swipe medication into his backpack.  She told him he could not steal, but Johnson ignored her, so she reported the matter to her manager.  Smith went back to stocking until she saw a man on a scooter having trouble exiting the store.  She was helping him when Johnson approached the door, telling her to " 'get the hell out of the way.' "  She explained she was helping the other man, and Johnson responded, " 'Move, Bitch.  Get out the way.' "  Smith told him to wait, and Johnson stated that if she did not get out of the way he was going to stab her.  She replied, " 'Really?  Like you're going to stab me?' "  He then lunged at her, and she saw a knife in his hand.  She moved out of the way because she did not want to get stabbed.  She was scared and angry, feeling that her life had been threatened.  Johnson exited the store and Smith followed him, the pair yelling back and forth as Johnson walked away.

While the incident was unfolding, the store manager called 911.  A recording of the call was admitted into evidence and played for the jury.  In it, the manager can first be heard reporting the theft, but then exclaims: "[H]e's threatening to stick her with a knife!  He threatened her with a knife!"  She confirmed she saw the knife in Johnson's hand.  Video of the incident was also admitted into evidence and played for the jury.  The police responded and began looking for Johnson.  When they located him walking down a street, Johnson was cooperative and did not appear to be under the influence.  Officers then searched Johnson, finding a crack cocaine pipe, pliers or wire cutters, and the stolen medication.  No knife was found.

**B.    *Sentencing Matters***

Before sentencing, defense counsel moved to dismiss Johnson's prior strike convictions under section 1385, subdivision (a) and *People v. Superior*

*Court (Romero)* (1996) 13 Cal.4th 497 (*Romero*). Specifically, defense counsel argued that the two prior strikes (1991 and 2013) were remote in time; that Johnson did not injure anyone in the present offense; that Johnson was homeless and ill at the time; and that he needed treatment rather than prison to break the cycle related to "mental health issues, homelessness, and poverty." According to defense counsel, Johnson was "willing to address the mental health and substance abuse issues that [had] been the driving force behind his criminal actions." The prosecution disagreed. After detailing Johnson's criminal history—including convictions for four previous felonies and three prior misdemeanors, as well as nine parole violations since 1990— the facts of the instant case, and the numerous factors in aggravation, the prosecutor recommended denial of the *Romero* motion and a 12-year prison sentence.

Probation also recommended a prison sentence, noting that Johnson, who was 52 at the time, had been in custody or on probation/parole for the majority of his adult life. Relevant social factors included Johnson's report that his parents separated when he was a newborn, and he never knew his father. He disclosed being sexually abused by female relatives from age eight to age 17. He was also physically abused by his mother's boyfriends. He suffers from emotional and psychological issues, and attempted suicide at age 14. Johnson stated he had been diagnosed with bipolar disorder, depression, anxiety, and posttraumatic stress disorder, and had been hospitalized on several occasions for mental health issues.

The probation report also detailed Johnson's history of chronic substance abuse. He began using marijuana and alcohol at age eight, cocaine at age 13, and heroin at age 42. Johnson reported using cocaine and heroin daily until he was arrested for the current crimes. In a written statement,

4

Johnson stated he committed the instant offense because he was starving, homeless, and on drugs. He admitted he had a drug problem and a mental health problem; stated he was not in his "right state of mind" at the time of the offense, being "high off crack" and on psychiatric medication; and offered that he is "not a bad person when [he is] not high off drugs."

On July 25, 2022, the trial court first admitted evidence memorializing three of Johnson's prior felony convictions (from 1991, 2009, and 2013) and found them to be true beyond a reasonable doubt. The trial court then proceeded to sentencing. Preliminarily, it denied the *Romero* motion, reasoning as follows: "[T]he criminal record is just too serious. It goes back to 1988. There are multiple felonies and what—including a recent robbery from May 26, 2013, where eventually he went to CDC, and so I don't—I don't think it would be appropriate to grant Romero in this case. The record is too serious. I would also note that the offense in this case, I consider it a serious offense with the trial that I had in front of the jury, and I would note that there are numerous parole violations. . . . So I don't think it would be possible to supervise him and give him probation." The court went on: "I'm certainly willing in certain cases to give treatment to somebody, but I just don't think, based on Mr. Johnson's track record, that he's going to be successful at it, and I think that there comes a point, unfortunately, where what I have to do as a Court is to protect society, and that's where we are now I think." The trial court additionally noted that the case could have been charged as a three strikes case in which Johnson would have been facing up to 36 years to life, but the prosecution "wisely in this case did, you know, not treat this as a third-strike case, but I think a second-strike case is appropriate."

Turning to sentencing, the trial court found that Johnson's prior criminal record evinced a "pattern of regular and increasingly serious

5

criminal conduct, and [Johnson] represents a danger to others."  With respect to count 1 the court opined:  "So what I'm going to do is I'm going to select the midterm of three years in the Department of Corrections and Rehabilitation, and I'm selecting that because this was a violent offense and there—his prior convictions and parole violations are numerous."  The three years was doubled to six years as a second strike and ordered to run consecutively to the one-year weapon enhancement and a five-year enhancement for a qualifying prior conviction, for a total of 12 years.  The court stayed the enhancement for the other prior conviction and ordered a sentence of six months in county jail concurrent with the 426 days of credit for time served for count 2.

Johnson timely appealed.

## II.  DISCUSSION

### A.    *Claims Based on Changes to the Sentencing Laws*

Johnson asserts that his trial counsel was ineffective for failing to argue that the enhancements that were not stayed in this case should have been dismissed under recent amendments to section 1385.  He further maintains that that the court abused its discretion in failing to impose the low term for count 1 under recent amendments to section 1170 and that counsel was ineffective for failing to press the issue at sentencing.  We are not convinced.

#### 1.    *Ineffective Assistance of Counsel*

The Sixth Amendment guarantees the " 'right to the effective assistance of counsel.' "  (*Strickland v. Washington* (1984) 466 U.S. 668, 685–686.)  The method for analyzing counsel's effectiveness in this constitutional context is well settled.  " '[T]o establish a claim of ineffective assistance of counsel, [Johnson] bears the burden of demonstrating, first, that counsel's performance was deficient because it "fell below an objective standard of

6

reasonableness [¶] . . . under prevailing professional norms." [Citations.] Unless [he] establishes the contrary, we shall presume that "counsel's performance fell within the wide range of professional competence and that counsel's actions and inactions can be explained as a matter of sound trial strategy." [Citation.] If the record "sheds no light on why counsel acted or failed to act in the manner challenged," an appellate claim of ineffective assistance of counsel must be rejected "unless counsel was asked for an explanation and failed to provide one, or unless there simply could be no satisfactory explanation." [Citations.] If [Johnson] meets the burden of establishing that counsel's performance was deficient, he . . . also must show that counsel's deficiencies resulted in prejudice, that is, a "reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." ' " (*People v. Bell* (2019) 7 Cal.5th 70, 125.)

" 'The object of an ineffectiveness claim is not to grade counsel's performance. If it is easier to dispose of an ineffectiveness claim on the ground of lack of sufficient prejudice . . . , that course should be followed.' " (*In re Cox* (2003) 30 Cal.4th 974, 1019–1020; see *People v. Carrasco* (2014) 59 Cal.4th 924, 982.) We follow that course here. In doing so, we note that "[t]he likelihood of a different result must be substantial, not just conceivable." (*Harrington v. Richter* (2011) 562 U.S. 86, 112.) Thus, "[s]urmounting *Strickland*'s high bar is never an easy task." (*Id.* at p. 105.)

### 2. *Failure to Raise Section 1385, Subdivision (c)*

In 2021, the Legislature enacted Senate Bill No. 81 (2021–2022 Reg. Sess.), which became effective on January 1, 2022 and amended section 1385 to prescribe specific mitigating circumstances for trial courts to consider when deciding whether to strike enhancements from a defendant's sentence

in the interests of justice.  (Stats. 2021, ch. 721, § 1.)  In particular, section 1385, subdivision (c) now provides:  "(1) Notwithstanding any other law, the court shall dismiss an enhancement if it is in the furtherance of justice to do so, except if dismissal of that enhancement is prohibited by any initiative statute. [¶] (2) In exercising its discretion under this subdivision, the court shall consider and afford great weight to evidence offered by the defendant to prove that any of the mitigating circumstances in subparagraphs (A) to (I) are present.  Proof of the presence of one or more of these circumstances weighs greatly in favor of dismissing the enhancement, unless the court finds that dismissal of the enhancement would endanger public safety.  'Endanger public safety' means there is a likelihood that the dismissal of the enhancement would result in physical injury or other serious danger to others."

The mitigating circumstances referenced in subparagraphs (A) through (I) are:  "(A) Application of the enhancement would result in a discriminatory racial impact as described in paragraph (4) of subdivision (a) of Section 745. [¶] (B) Multiple enhancements are alleged in a single case.  In this instance, all enhancements beyond a single enhancement shall be dismissed. [¶] (C) The application of an enhancement could result in a sentence of over 20 years.  In this instance, the enhancement shall be dismissed. [¶] (D) The current offense is connected to mental illness. [¶] (E) The current offense is connected to prior victimization or childhood trauma. [¶] (F) The current offense is not a violent felony as defined in subdivision (c) of Section 667.5. [¶] (G) The defendant was a juvenile when they committed the current offense or any prior offenses, including criminal convictions and juvenile adjudications, that trigger the enhancement or enhancements applied in the current case. [¶] (H) The enhancement is based on a prior conviction that is over five years

8

old. [¶] (I) Though a firearm was used in the current offense, it was inoperable or unloaded." (§ 1385, subd. (c)(2)(A)–(I).) To determine that an offense is "connected to" mental illness, prior victimization, or childhood trauma for purposes of section 1385, the court must conclude that the mitigating circumstance "*substantially contributed* to the defendant's involvement in the commission of the offense." (*Id.*, subd. (c)(5) & (6)(A)–(B), italics added.)

Here, Johnson maintains that counsel was ineffective for failing to argue under the amendments to section 1385 that his enhancements should be dismissed given their age and multiplicity, his mental health issues, and his prior victimization and childhood trauma. (§ 1385, subd. (c)(2)(B), (D), (E) & (H).) We can conceive of several tactical reasons why defense counsel may have decided not to request dismissal of the enhancements under the amendments to section 1385 in this case. For example, defense counsel may have concluded that it was Johnson's substance abuse rather than his mental illness or childhood trauma/prior victimization that substantially contributed to his crimes, and thus raising the issue would be futile, especially since the trial court had denied Johnson's *Romero* motion based on similar grounds. (See *People v. Jones* (1979) 96 Cal.App.3d 820, 827 ["Trial counsel is not required to make futile objections, advance meritless arguments or undertake useless procedural challenges merely to create a record impregnable to assault for claimed inadequacy of counsel."].)

However, even if we were to assume counsel's performance on this point was deficient, Johnson still cannot establish ineffective assistance because he cannot show prejudice. As stated above, defense counsel filed a *Romero* motion requesting that Johnson's prior strike enhancements be dismissed in the interests of justice pursuant to section 1385, subdivision (a)

9

for largely the same reasons Johnson cites here as supporting a subdivision (c) claim—the age of the prior strikes and the need to break his cycle of "mental health issues, homelessness, and poverty." And before ruling, the trial court "carefully considered the probation report," which chronicled Johnson's history of mental illness, victimization, and substance abuse. Nevertheless, the court denied the *Romero* motion, making clear that it was not interested in granting any more leniency to Johnson than the prosecution already had in reducing the case from three strikes to two. Rather, the seriousness of Johnson's criminal record and the seriousness of the offense before it led the court to opine "that there comes a point, unfortunately, where what I have to do as a Court is to protect society, and that's where we are at now I think." The court then expressly found that Johnson "represents a danger to others."

Subdivision (c)(2) of section 1385 provides that "[p]roof of the presence of one or more of these [mitigating] circumstances weighs greatly in favor of dismissing the enhancement, *unless the court finds that dismissal of the enhancement would endanger public safety*. 'Endanger public safety' means there is a likelihood that the dismissal of the enhancement would result in physical injury or other serious danger to others." (Italics added.) It is clear that the trial court here believed Johnson represented a serious danger to others. Thus, we see no reasonable likelihood, much less a substantial one, that the trial court would have reached a different outcome had defense counsel also presented a request to dismiss enhancements under section 1385, subdivision (c).

### 3. *Failure to Apply the Low Term Under Section 1170*

Johnson next contends that remand is required because the trial court abused its discretion in failing to treat the low term as the presumptive sentence for count 1 under recent amendments to section 1170. In a related

10

argument, Johnson asserts that defense counsel was ineffective for failing to argue at sentencing that the low term should apply due to his history of psychological, physical, and/or childhood trauma. We reject both claims.

Senate Bill No. 567 (2021–2022 Reg. Sess.) (Senate Bill 567), which amended section 1170 and took effect on January 1, 2022, " 'added a provision that requires the court to impose the low term if . . . the defendant's psychological, physical, or childhood trauma was a contributing factor in the commission of the offense, "unless the court finds that the aggravating circumstances outweigh the mitigating circumstances [so] that imposition of the lower term would be contrary to the interests of justice." (Stats. 2021, ch. 731, § 1.3, adding Pen. Code, § 1170, subd. (b)(6), by amendment; see Stats. 2021, ch. 731, § 3(c).)' " (*People v. Bautista-Castanon* (2023) 89 Cal.App.5th 922, 927 (*Bautista-Castanon*).) Our colleagues in Division Five recently suggested that, for purposes of this provision, "an initial showing has been made when the record and/or arguments are sufficient to put a trial court on notice that a defendant's [(b)(6) circumstance] may have been a contributing factor in commission of the underlying offense." (*People v. Fredrickson* (2023) 90 Cal.App.5th 984, 994 (*Fredrickson*).) Johnson argues that the record in this case clearly makes such an initial showing, pointing to the evidence in the record with respect to childhood and psychological trauma we have already described. Citing *People v. Salazar* (2023) 15 Cal.5th 426 (*Salazar*) and several related appellate court opinions, Johnson contends remand for resentencing is required unless the record " 'clearly indicates' " that the trial court would reach the same decision if it had specifically considered the applicability of subdivision (b)(6)(A) of section 1170.

Preliminarily, we reject Johnson's articulation of our applicable standard of review. All of the cases he cites address the appropriate standard for remand where the law changed *after* the original sentencing hearing. Under such circumstances, our high court has concluded that "when a sentencing court was not aware of the full scope of its discretionary powers at the time the defendant was sentenced, 'the appropriate remedy is to remand for resentencing unless the record "clearly indicate[s]" that the trial court would have reached the same conclusion "even if it had been aware that it had such discretion." ' " (*Salazar, supra,* 15 Cal.5th at p. 419 [sentence on appeal when Legislature enacted Senate Bill 567]; accord, *People v. Gutierrez* (2014) 58 Cal.4th 1354, 1390–1391 (*Gutierrez*) [after Supreme Court held there was no presumption in favor of life without parole for certain juvenile offenders, remand was appropriate; because the "trial courts operated under a governing presumption in favor of life without parole, we cannot say with confidence what sentence they would have imposed absent the presumption"]; *People v. Almanza* (2018) 24 Cal.App.5th 1104, 1110–1111 [remand appropriate "when there is a retroactive change in the law subsequent to the date of the original sentence that allows the trial court to exercise discretion it did not have at the time of sentence"]; *People v. Banner* (2022) 77 Cal.App.5th 226, 242 [citing *Gutierrez* when remanding for retroactive application of newly enacted § 1170, subd. (b)(6)].)

Here, in obvious contrast, the law changed effective January 1, 2022, and Johnson was not sentenced until July 2022. "Absent evidence to the contrary, we presume that the trial court knew and applied the governing law." (*Gutierrez, supra,* 58 Cal.4th at p. 1390.) And we review the sentencing court's choice of term for abuse of discretion. (*People v. Panozo* (2021) 59 Cal.App.5th 825, 837.) "To prove an abuse of discretion, ' "[t]he burden is

on the party attacking the sentence to clearly show that the sentencing decision was irrational or arbitrary. [Citation.] In the absence of such a showing, the trial court is presumed to have acted to achieve legitimate sentencing objectives, and its discretionary determination to impose a particular sentence will not be set aside on review." ' [Citation.] To meet this burden, the defendant must 'affirmatively demonstrate that the trial court misunderstood its sentencing discretion.' " (*People v. Lee* (2017) 16 Cal.App.5th 861, 866 (*Lee*).)

In other words, when " 'the record shows that the trial court proceeded with sentencing on the erroneous assumption it lacked discretion, remand is necessary so that the trial court may have the opportunity to exercise its sentencing discretion at a new sentencing hearing. [Citations.] Defendants are entitled to "sentencing decisions made in the exercise of the 'informed discretion' of the sentencing court," and a court that is unaware of its discretionary authority cannot exercise its informed discretion.' [Citation.] *If the record is silent, however, the defendant has failed to sustain his burden of proving error, and we affirm.*" (*Lee, supra,* 16 Cal.App.5th at pp. 866–867, italics added.)

It is true that the trial court did not expressly mention section 1170, subdivision (b)(6)(A) at sentencing, and defense counsel did not argue its applicability. Nevertheless, there is nothing in the record affirmatively showing the trial court misunderstood its sentencing discretion under the new law. And there is certainly no showing that the court's sentencing decision was irrational or arbitrary. We see no abuse of discretion.[3]

---

[3] Indeed, even were we to assume that the trial court was somehow unaware of its discretion under section 1385, subdivision (c), we would not remand. Rather, for the reasons discussed below, we would conclude the

Johnson additionally argues that defense counsel was ineffective for failing to raise the applicability of section 1170, subdivision (b)(6)(A) at sentencing. The Attorney General suggests this claim was forfeited. Whether such a claim can be forfeited has not yet been settled. (Compare *People v. Archane* (2023) 92 Cal.App.5th 1037, 1044 [§ 1170, subd. (b)(6) claim forfeited if not presented at sentencing] with *Fredrickson, supra,* 90 Cal.App.5th at p. 994, fn. 8 ["the mandate [in § 1170, subd. (b)(6)] does not apply if not triggered by an initial showing, but it is not subject to forfeiture"].) We need not resolve this conflict, however, because we easily conclude that Johnson cannot show prejudice for many of the reasons already discussed in rejecting his other ineffectiveness claim.

As stated above, the trial court denied defense counsel's *Romero* motion made on similar mental health grounds after it "carefully considered the probation report," which chronicled Johnson's history of mental illness, victimization, and substance abuse. In doing so, the court cited the seriousness of Johnson's criminal record and the seriousness of the offense; found Johnson represented a danger to others; and indicated Johnson had already been granted appropriate leniency when the case was reduced from three strikes to two. Thereafter, in sentencing Johnson to the middle term for count 1, the court expressly found as aggravating factors that Johnson's prior criminal record evinced a "pattern of regular and increasingly serious criminal conduct, and that [Johnson] represents a danger to others."

Pursuant to subdivision (b)(6)(A) of section 1170, a sentencing court is required " 'to impose the low term if . . . the defendant's psychological, physical, or childhood trauma was a contributing factor in the commission of

record "clearly indicates" that the trial court would have reached the same conclusion.

the offense, "unless the court finds that the aggravating circumstances outweigh the mitigating circumstances [so] that imposition of the lower term would be contrary to the interests of justice." ' " (*Bautista-Castanon*, *supra*, 89 Cal.App.5th at p. 927.)  It is apparent that the trial court believed that the aggravating circumstances in the case did outweigh the mitigating circumstances such that imposition of the lower term would be contrary to the interests of justice.  We cannot conceive that the trial court would have reached a different outcome had defense counsel also presented a specific argument under section 1170, subdivision (b)(6)(A).

## B.    *Propriety of Staying the Second Five-year Enhancement*

As a final matter, Johnson claims that the trial court improperly stayed his second five-year prior serious felony enhancement rather than striking it. He invites this court to strike the enhancement.  The Attorney General agrees that the trial court erred by staying the enhancement but suggests remand on this issue.  We accept the Attorney General's concession and agree a limited remand is appropriate to allow for correction of this error.

As we have previously held:  "Under section 1385, a trial court may 'strike or dismiss an enhancement' or 'the additional punishment for that enhancement in the furtherance of justice.'  (§ 1385, subd. (b)(1).)  'The trial court has no authority to stay an enhancement, rather than strike it—not, at least, when the only basis for doing either is its own discretionary sense of justice.'  (*People v. Lopez* (2004) 119 Cal.App.4th 355, 364; accord, *People v. Brewer* (2014) 225 Cal.App.4th 98, 104.)  Rather, the only authority for staying an enhancement is California Rules of Court, rule 4.447, which applies when 'an enhancement that *otherwise* would have to be either imposed or stricken is barred by an overriding statutory prohibition.  In that situation—and that situation only—the trial court can and should stay the

15

enhancement." (*Lopez*, at p. 365; accord, *Brewer*, at p. 104.) We agree with the parties that it appears that the trial court intended to exercise its discretion under section 1385, since there was no statute precluding [Johnson] from being sentenced on both enhancements and rule 4.447 thus does not apply.' " (*People v. Bay* (2019) 40 Cal.App.5th 126, 139.)

## III. DISPOSITION

The matter is remanded for the trial court to determine whether to strike the stayed five-year serious felony enhancement, or to strike the punishment for that enhancement, and to prepare an amended abstract of judgment reflecting its decision. The clerk shall forward a certified copy of the amended abstract of judgment to the Department of Corrections and Rehabilitation. The judgment is otherwise affirmed.

CASTRO, J.*


WE CONCUR:


HUMES, P. J.


LANGHORNE WILSON, J.


A166220
*People v. Johnson*

---

* Judge of the Alameda County Superior Court, assigned by the Chief Justice pursuant to article VI, section 6 of the California Constitution.